IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. PATRICK ST. GERMAIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-1279 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| DR. RAYMOND WISNIEWSKI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Dr. Patrick St. Germain ("Plaintiff") brings this action against Dr. Raymond Wisniewski, Nutrimost LLC, and Nutrimost Doctors, LLC ("Defendants") for breach of contract (Counts I and II), unjust enrichment (Counts III and IV), tortious interference with an advantageous business relationship (Count V), fraudulent transfer (Count VI), civil conspiracy (Count VII), and equitable relief (Count VIII). (Complaint ("Compl.") (Doc. 1)). Defendants move to dismiss Counts III-VIII – all claims save for breach of contract – pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Partial Motion to Dismiss ("Defs.' Mot.") (Doc. 9)). For the reasons stated below, Defendants' Partial Motion to Dismiss will be granted in part and denied in part.

### I. MEMORANDUM

**BACKGROUND**

Plaintiff alleges that he entered into a business contract (the "Agreement") with Defendant Nutrimost, LLC, ("Nutrimost") on October 23, 2013. (Compl. at ¶ 17). Nutrimost was engaged in the distribution of the Nutrimost System, a weight-loss system oriented around using specialized scanning hardware and software (subject to frequent update and improvement)

1

in order to develop individualized biometric-based diet plans for its customers; said weight-loss plans included the recommended use of various "supplemental" consumables. (Id. at ¶ 9-15). Nutrimost registered the trademarks for the Nutrimost System. (Id. at ¶ 16). Plaintiff claims that the Nutrimost System was developed by Defendant Dr. Wisniewski, and that Dr. Wisniewski also executed the Agreement with Dr. St. Germain on behalf of Nutrimost. (Id. at ¶ 18). Plaintiff does not further allege the specifics of Dr. Wisniewski's position within Nutrimost.

The Agreement afforded Plaintiff the "exclusive, perpetual" right to use both the Nutrimost trademark and the "Nutrimost Resonant Frequency Technology" (the aforementioned hardware and software combination) within the Florida counties of Orange, Seminole, Lake and Osceola. (Id. at ¶ 17). A copy of the Agreement is attached to the Complaint. (Doc. 1 at Ex. B). The Agreement also stipulates that, in the event that Nutrimost transfers control of its licensed technologies to a third party, it must stipulate that St. Germain has "the sole and exclusive option to retain the License (for use of the Nutrimost trademark and technology) or terminate it." (Id. at ¶ 21; Ex. B).

Nutrimost Doctors, ("Nutrimost Doctors") is a separate corporate entity, also formed by Dr. Wisniewski. (Id. at ¶ 23). Plaintiff alleges that Dr. Wisniewski formed Nutrimost Doctors for the purpose of converting his licensor/licensee business structure to a franchisor/franchisee model. (Id.). According to Plaintiff, Nutrimost Doctors issued franchisee rights to the use of the Nutrimost product based on zip code, whereas Nutrimost, previously offered licensor/licensee agreements on a county-wide basis. (Id. at ¶ 27). Nutrimost, allegedly transferred the rights to the Nutrimost System to Nutrimost Doctors. (Id. at ¶ 25). The Complaint alleges that Defendant Wisniewski is the "Sole Member, CEO, and Director" of Nutrimost Doctors. (Id. at ¶ 25). The Complaint also alleges that Nutrimost transferred its rights to Nutrimost Doctors, without ever

2

giving Dr. St. Germain the option of retaining his license granted by Nutrimost, in violation of section 14.1(b) of the Agreement. (Id. at ¶ 26). In fact, Dr. St. Germain alleges that Dr. Wisniewski specifically asked him to voluntarily convert his license as granted by Nutrimost, into franchisee rights with Nutrimost Doctors, for an additional fee; Dr. St. Germain declined. (Id. at ¶¶ 26-29).

After the formation of Nutrimost Doctors and Dr. St. Germain's refusal to convert his licensee rights into franchisee rights, Nutrimost and Nutrimost Doctors, allegedly acting under the direction of Dr. Wisniewski, ceased giving Dr. St. Germain the product support, in the form of technological updates and processing orders for supplies, that was provided for in the Agreement. (Id. at ¶¶ 30-33, 51-53). Additionally, Plaintiff alleges that Nutrimost Doctors granted another individual, Dr. Daniel Yachter ("Dr. Yachter"), franchisee rights to the use of the Nutrimost trademark and technology within a zip code that includes a portion of Volusia County, a county abutting the Seminole County territory whose exclusivity rights had been leased to Plaintiff. (Id. at ¶¶ 34-35, 43-44).

While Dr. Yachter had rights to Volusia County, he allegedly advertised his office's use of the Nutrimost System in St. Germain's territories, including running radio advertisements in the city of Orlando, and registering a website titled "Nutrimost Orlando" – Orlando being situated within Orange County, to which Plaintiff had exclusive rights per the Agreement. (Id. at ¶ 39). These ads all directed customers to contact Dr. Yachter about Nutrimost at his Lake Mary office in Seminole County – another county to which Plaintiff had exclusive rights – despite the fact that the actual Nutrimost equipment used by Dr. Yachter was in Volusia County. (Id. at ¶¶ 41-43). Plaintiff further alleges that Dr. Yachter was aware of the conflict, as he asked Plaintiff for permission to advertise within the Seminole County area, which Plaintiff refused. (Id. at ¶¶

3

36-38). Section 3.0(b) of the Agreement between Plaintiff and Nutrimost, grants exclusive rights to "use, sell, distribute, deliver, offer to sell and practice" the Nutrimost System within the designated four-county territories. (Id. at Ex. B).

As stated *supra*, Defendants move to dismiss Counts III-VIII of the Complaint, which allege unjust enrichment, tortious interference with an advantageous business relationship, fraudulent transfer, civil conspiracy, and equitable relief, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 9).

**ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

i. Piercing the Corporate Veil

Defendants move to dismiss Plaintiff's claims insofar as they are asserted against Dr. Wisniewksi in his individual capacity, as he operated in the context of Nutrimost and Nutrimost Doctors. (Doc. 9 at 4-7). Defendants contend that Plaintiff has failed to allege sufficient facts to support piercing the corporate veil. (Id.). Plaintiff disagrees. (Pl.'s Br. in Opp'n (Doc. 17) at 3-5).

4

Pennsylvania courts typically recognize "a strong presumption . . . against piercing the corporate veil," and "the general rule is that a corporation[1] shall be regarded as an independent entity even if its stock is owned entirely by one person." Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1985). Nonetheless, there are certain situations where piercing the veil is countenanced in Pennsylvania – namely, when it is determined that "the corporation is an artifice and a sham to execute illegitimate purposes and an abuse of the corporate fiction and immunity that it carries." Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521 (3d Cir. 1994) (quoting Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc., 758 F.Supp. 1054, 1058 (W.D.Pa. 1990) ("In deciding whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting the facade for the operations of the dominant shareholder.")).

Although there are factors that the Court will consider, there remains no clear test for determining when piercing the corporate veil is appropriate. Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC., 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) (holding that factors to consider include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetuate a fraud"). "[A] court inquires, inter alia, whether corporate formalities were observed and corporate records kept, whether officers and directors other than the dominant shareholder actually function, and whether the dominant shareholder has used the assets of the corporation as

---

[1] The entities at issue in this case are limited liability corporations, but "Pennsylvania courts have found that the veil of an LLC may be pierced to the same degree as that of a corporation." Partners Coffee Co., LLC v. Oceana Servs. & Products Co., 700 F. Supp. 2d 720, 736 (W.D.Pa. 2010) (citing Advanced Tel. Sys. v. Com–Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1281, n. 11 (Pa. Super. Ct. 2004); Schwab v. McDonald (In re LMcD, LLC), 405 B.R. 555, 560 (Bankr. M.D.Pa. 2009).

5

if they were his or her own." 12 Summ. Pa. Jur. 2d Business Relationships § 1:27 (2d ed.) (citing Fletcher-Harlee Corp. v. Szymanski, 936 A.2d 87 (Pa. Super. Ct. 2007), appeal denied, 956 A.2d 435 (2008) and cert. denied, 129 S. Ct. 1581 (2009)). "The corporate form will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime." Mosaica Educ., Inc. v. Pennsylvania Prevailing Wage Appeals Bd., 925 A.2d 176, 184 (Pa. Commw. Ct. 2007) (citing First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. Ct. 1991)).

Plaintiff argues that a specific showing of fraud is not required in order to pierce the corporate veil, and that the veil may be pierced "whenever it is necessary to avoid injustice or when public policy requires it." (Doc. 17 at 4 (quoting Lycoming County Nursing Home Ass'n, Inc. v. Comm. Of Pa. Dept. of Labor and Industry, Prevailing Wage Appeal Bd., 627 A.2d 238, 290 (Pa. Commw. Ct. 1988)). He maintains that, "the totality of allegations in the Complaint . . . indicate that Defendant Wisniewski engaged in inequitable conduct, and thus piercing the corporate veil is appropriate to remedy wrong and protect against fraud." (Id.). While the Court can imagine allegations in this case that would provide a basis for piercing the corporate veil, Plaintiff has not pleaded those facts in the Complaint as it is currently styled. (See Compl.). While Plaintiff has made general, conclusory statements regarding the need to pierce the corporate veil to avoid injustice, the Complaint does not contain factual allegations that speak to any of the factors that Pennsylvania courts consider when deciding whether to pierce the corporate veil. See Advanced Tel. Sys., Inc., 846 A.2d at 1278; Fletcher-Harlee Corp., 936 A.2d 87. Therefore, even viewing all facts in a light most favorable to Plaintiff, the Complaint fails to state a basis for piercing the corporate veil.

ii.  Count VI – Fraudulent Transfer

Defendants move to dismiss Count VI, which alleges that all defendants engaged in fraudulent transfer. Plaintiff's Complaint does not identify a statutory basis for the fraudulent transfer claim; Defendant cites to 12 Pa. Stat. and Cons. Stat. Ann. § 5105 in its Brief in Support of Partial Motion to Dismiss, and Plaintiffs do not dispute this statutory grounding in their Response Brief. (See Compl. at ¶¶ 79-84; Doc. 9 at 13-15; Doc. 17 at 7). As such, the Court understands Plaintiff's Count VI to be an alleged violation of 12 Pa. Stat. and Cons. Stat. Ann. § 5105. As the Court has already determined that Plaintiff failed to plead sufficient facts to support piercing the corporate veil, and Plaintiff articulates no other basis for Dr. Wisniewski's individual liability for an alleged fraudulent transfer, Count VI will be dismissed insofar as it is stated against Dr. Wisniewski individually.

Under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), a transfer is fraudulent as to a creditor who brings a claim against a debtor when "the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or became insolvent as a result of the transfer or obligation." 12 Pa. Stat. and Cons. Stat. Ann. § 5105. The creditor's claim against the debtor must have arisen "before the transfer was made or the obligation was incurred." Id. Unlike the actual intent standard, claims of constructive fraud are not subject to the heightened pleading standard of Rule 9(b) because "fraud does not have to be proven." In re Rosenblum, 545 B.R. 846, 866 (Bankr. E.D. Pa. 2016)[2] (citing United States v. Rocky Mountain

---

[2] Fid. Bond & Mortgage Co. v. Brand, 371 B.R. 708, 719 (E.D. Pa. 2007) ("The constructive fraud provisions of the PUFTA and the Bankruptcy Code should be construed and interpreted uniformly because consistency between the two statutes was a goal of those who drafted the PUFTA and who have since interpreted it").

Holdings, Inc., 2009 WL 564437, at *9 (E.D.Pa. Mar. 4, 2009); see also In re Transcon. Refrigerated Lines, Inc., 438 B.R. 520, 522 (Bankr. M.D.Pa. 2010) (observing that "most Courts in the Circuit recognize that constructive fraudulent transfer claims are not analyzed under the heightened Rule 9(b) pleading standard" and accordingly declining to apply the standard)).

In determining what constitutes an exchange of "reasonably equivalent value" under § 5105, the Court applies a two-step process:

> First, the court must determine whether the debtor received "any value at all" from the challenged transaction. Value is defined by the Bankruptcy Code as property, or satisfaction or securing of a present or antecedent debt of the debtor. Second, if the court finds that a debtor received at least some value, it must then decide whether the value received was roughly the value it gave.

Image Masters, Inc. v. Chase Homes Finance, 489 B.R. 375, 387 (E.D.Pa. 2013) (citing In re R.M.L., 92 F.3d 139, 149 (3d Cir. 1996)). Additionally, the Court is expected "to look to the totality of the circumstances, including (1) the fair market value of the benefit received as a result of the transfer, (2) the existence of an arms-length relationship between the debtor and the transferee, and (3) the transferee's good faith." Id. (citing In re R.M.L, Inc., 92 F.3d at 148-49). Finally, the Court may take into consideration "both direct and indirect benefits conferred by the transfer." Id. (citing Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 646 (3d Cir. 1991)). The Court finds that Plaintiff failed to allege a single fact to support this element of a fraudulent transfer claim. Plaintiff omits *any* mention of what, if anything, was given to Nutrimost in exchange for transferring rights to Nutrimost Doctors.

Plaintiff's failure to provide a single supporting fact or basis for his allegation with respect to the "reasonably equivalent value" element of constructive fraudulent transfer renders his Complaint insufficient under the governing pleading standard with respect to Count VI as stated against Nutrimost and Nutrimost Doctors. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

8

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). After Twombly, "it is no longer sufficient to allege mere elements of a cause of action." Phillips v. Cty. of Allegheny, 515 F.3d 224 (3d Cir. 2008). The Court of Appeals for the Third Circuit has interpreted the Twombly pleading standard to require "'a complaint with enough factual matter (taken as true) to suggest' the required element." Id. (citing Twombly, 127 S.Ct. at 1965). This "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id. (citing Twombly, 127 S.Ct. at 1965). As Plaintiff has alleged no facts at all to support the element of "reasonably equivalent value," Count VI of the Complaint will be dismissed in full.

    iii.    <u>Counts III and IV – Unjust Enrichment against Defendants Dr. Wisniewski and Nutrimost Doctors</u>

Plaintiff alleges an unjust enrichment claim against Dr. Wisniewski individually (Count III) and against Nutrimost Doctors (Count IV). Defendants move to dismiss both Counts III and IV.

Unjust enrichment results when a party inequitably retains benefits conferred by an opposing party. Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995). The elements necessary to show unjust enrichment under Pennsylvania law are: "(1) benefits conferred on defendant by Plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008) (quoting Limbach Co. LLC. v. City of Philadelphia, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006)). The "unjust" element of the claim in question has been described as "the 'most significant' one under Pennsylvania law." Gabriel

v. Giant Eagle, Inc., 124 F.Supp.3d 550, 569 (W.D.Pa. 2015) (appeal dismissed) (quoting Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc., 933 A.2d 664, 668-69 (Pa. Super. Ct. 2007)).

As established *supra*, Plaintiff has not established a basis for piercing the corporate veil with respect to Dr. Wisniewski. See, e.g., Bouriez v. Carnegie Mellon University, 2005 WL 3006831 (W.D.Pa. Nov. 9, 2005). However, under the participation theory of liability:

> [a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort. The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior; it does not however relieve the individual of his responsibility.

Synthes, Inc. v. Marotta, 281 F.R.D. 217, 232 (E.D.Pa. 2012) (internal citations omitted) (quoting Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir.1978); Coach, Inc. v. Sunfastic Tanning Resort, 2011 WL 5447972, at *6 (E.D.Pa. Nov. 10, 2011)). The participation theory of liability can be employed even when facts are insufficient to pierce the corporate veil. Under this theory of liability, the "only crucial predicate" to Dr. Wisniewski's liability "is his participation in the wrongful acts." Donsco, 587 F.3d at 606.

The participation theory of liability, although historically applied in the context of torts, has been utilized by certain courts applying Pennsylvania law in connection with claims for unjust enrichment. See, e.g., USTAAD Sys., Inc. v. iCap Int'l Corp., 2010 WL 3984882, at *1 n. 3 (M.D.Pa. Oct. 12, 2010) ("Although the participation theory is sometimes articulated with reference to 'commission of a tort,' the court finds it significant that the theory has also been articulated in broader terms, e.g., 'misfeasance.'") (citing Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983); Parker Oil Co. v. Mico Petro & Heating Oil, LLC, 979 A.2d 854, 856 (Pa. Super. Ct. 2009)); E. Roofing Sys., Inc. v. Cestone, 2012 WL 6051097, at *13 (Pa. Com. Pl. Apr. 13, 2012) ("The preliminary objections of Defendant . . . to his personal liability for . . .

10

unjust enrichment (Count III) . . . are OVERRULED based upon the participation theory."). As Plaintiff sets forth allegations of Dr. Wisniewski's individual acts taken to engage in the wrongdoing underlying the claim of unjust enrichment, the requirements for participation liability have been met. Donsco, 587 F.3d at 606. The Court assumes *arguendo* that the participation theory of liability can establish individual liability in the context of a claim for unjust enrichment – without rendering a holding on that question – and will thus address the merits of Plaintiff's Count III.

Plaintiff has failed to state a claim for unjust enrichment against Dr. Wisniewski. He contends that:

> Defendant Wisniewski effectuated the transfer of Defendant [Nutrimost]'s assets to Defendant [Nutrimost Doctors], and prohibited Plaintiff from the use of his license without providing him with just compensation. Plaintiff therefore conferred a benefit on Wisniewski (albeit involuntarily), by which Defendant Wisniewski could pursue franchisees in Plaintiff's protected territory, without paying him for the same. Accordingly, . . . an unjust enrichment claim is proper.

(Doc. 17 at 5-6). The "benefit" conferred upon Dr. Wisniewski, as identified by Plaintiff, is the ability to "pursue franchisees" within territory to which Plaintiff had exclusive rights pursuant to the Agreement, without providing Plaintiff with compensation. The Court is not persuaded that the facts as stated in the Complaint satisfy the first of the unjust enrichment elements.

The first element of an unjust enrichment claim is a "benefit conferred on defendant *by Plaintiff*." Sovereign Bank, 533 F.3d at 180 (emphasis added). "Thus, courts have emphasized that Plaintiff's actions are core to the cause of action. '[T]he doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the Plaintiff.'" Gabriel v. Giant Eagle, Inc., 124 F. Supp. 3d at 568-69 (quoting Northeast Fence, 933 A.2d at 668–669). Plaintiff has framed the benefit in the instant case as one that was conferred on defendant "involuntarily." The alleged benefit – Dr. Wisniewski's ability to pursue franchisees within

11

Plaintiff's protected territory – simply wasn't conferred *by Plaintiff*. In fact, Dr. Wisniewski sought Plaintiff's permission to alter the terms of the Agreement in order to utilize a franchisor/franchisee model, and Plaintiff refused. (Compl. at ¶ 27). According to Plaintiff's allegations, Dr. Wisniewki's distribution of franchisee rights within Plaintiff's protected counties was in violation of the Agreement and contrary to his wishes as expressed to Dr. Wisniewski. There is no potential reading of the Complaint to support a conclusion that Plaintiff conferred this benefit on Defendants. Plaintiff cannot get around this problematic fact by simply framing the benefit as one that he conferred "forcibly" or "involuntarily." (Compl. at ¶ 68; Doc. 17 at 5). Without an alleged benefit conferred on Dr. Wisniewski *by Plaintiff*, Plaintiff has failed to state a claim for unjust enrichment against Dr. Wisniewski individually. Thus, Count III will be dismissed.

Turning to Count IV, as stated against Nutrimost Doctors, the Court notes that "the doctrine of unjust enrichment is inapplicable where the relationship between the parties is founded upon a written agreement or express contract." Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006); see also, Gabriel, 124 F.Supp.3d at 569 (citing Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999)) ("A claim for unjust enrichment, wherein the law implies a quasi-contract which requires the defendant to pay to Plaintiff the value of the benefit conferred, does not exist where there is a written contract between the parties."). Plaintiff alleges the existence of a written contract between he and Nutrimost Doctors in Count II of the Complaint. (Compl.). The practice of alternate pleading means that "[t]he mere existence of a written contract between parties does not bar an unjust enrichment claim." PPG Industries, Inc. v. Generon IGS, Inc., 760 F.Supp.2d 520, 526 (W.D.Pa. 2011) (citing In re Prudential Insurance Company of America Sales Practice Litigation, 975 F.Supp. 584, 631 (D.N.J. 1996)). "If the

contract is unenforceable, Defendant may well have an unjust enrichment claim. However, if the contract is enforceable, Defendant's recovery of these alleged damages will be as a measure of the breach of the contract and not as a separate tort claim…" Id. See also Premier Payments Online, Inc. v. Payment Systems Worldwide, 848 F.Supp.2d 513, 527 (E.D.Pa. 2012) ("A Plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment in cases where there is a question as to the validity of the contract in question.") (quoting AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC., 2011 WL 3241356 at *3 (E.D.Pa. 2011)) (internal quotations omitted). The Court thus construes Plaintiff's unjust enrichment claim against Nutrimost Doctors as an alternative pleading, which is permissible under Federal Rule of Civil Procedure Rule 8. Generon, 760 F.Supp.2d at 526; see also 18 KT. TV, LLC. v. Entest Biomedical, Inc., 2011 WL 5374515 (M.D.Pa. 2011) ("Federal Rule of Civil Procedure 8(d) allows for the pleading of alternative theories in the same complaint, even if those theories are inconsistent.").

Plaintiff alleges that "Defendant [Nutrimost Doctors] has received a forcibly conferred benefit from Plaintiff Dr. St. Germain to Defendant [Nutrimost Doctors], under circumstances that make the conferring of this benefit unequitable under the circumstances." (Compl. at ¶ 72). Plaintiff alleges that, up to August of 2015, he continued to "abide by the terms of the Agreement, including making all payments required by the Agreement, and continuing to order products, including Supplemental Materials, from the Defendants." (Id. at ¶ 51). Plaintiff then goes on to allege that Nutrimost Doctors "refuse[d] to fill any and all orders for Nutrimost System products placed by Plaintiff Dr. St. Germain," and "completely frustrated the purpose of the Agreement, to the point that Plaintiff Dr. St. Germain has been robbed of both the benefit of his bargain, as well as his ability to continue to operate his business." (Id. at ¶¶ 52-53). The

allegation that Plaintiff made payments to Nutrimost Doctors and did not receive the Nutrimost products in exchange, are sufficient to survive a 12(b)(6) motion to dismiss the unjust enrichment claim. With respect to Count IV, Defendants' Motion to Dismiss will be denied.

    iv.    <u>Count V – Tortious Interference by Nutrimost Doctors and Dr. Wisniewski</u>

Plaintiff alleges a claim for tortious interference against Nutrimost Doctors and Dr. Wisniewski individually (Count V), which Defendants move to dismiss. (Compl. at ¶¶ 74-78; Doc. 9). Plaintiff frames Count V as one of tortious interference with an "advantageous business relationship." (Compl. at ¶¶ 74-78). It appears that this is a cause of action in the state of Florida, from which Plaintiff's counsel hails. There is no such precisely-named cause of action in the Commonwealth of Pennsylvania. Defendants have construed Count V to be a claim for tortious interference with contract and Plaintiff does not claim otherwise. (Doc. 10 at 10-13; Doc. 17 at 6-7).

The Court first considers Count V as alleged against Dr. Wisniewski. The Court of Appeals for the Third Circuit has described the necessary elements for a claim of tortious interference under Pennsylvania law as follows:

> (1) the existence of a contractual or prospective contractual or economic relationship between plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) [and] legal damage to the plaintiff as a result of the defendant's conduct. . .

<u>Acumed LLC. v. Advanced Surgical Services, Inc.</u>, 561 F.3d 199, 212 (3d Cir. 2009) (citing <u>Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.</u>, 140 F.3d 494, 530 (3d Cir. 1998)). A corporation's agents are awarded no privilege when operating outside of the scope of their authority; conversely, when operating within the scope of their authority, they are entitled to privilege. <u>CGB Occupational Therapy, Inc. v. RHA Health Serv., Inc.</u>, 357 F.3d 375, 387 (3d

Cir. 2004) (citing Maier v. Maretti, 671 A.2d 701, 707 (Pa. Super. Ct. 1995); Daniel Adams Assoc., Inc. v. Rimbach Pub., Inc., 519 A.2d 997, 1000 (Pa. Super. Ct. 1987); Labalokie v. Capital Area Intermediate Unit, 926 F.Supp. 503, 509 (M.D.Pa. 1996)). "The reason for this privilege is that holding an agent liable would be like holding the principal itself liable for the tort of interfering with its own contract, instead of holding the principal liable for breach of contract." Id.

Plaintiff has failed to allege that Dr. Wisniewski acted outside of his authority as an agent of Nutrimost when he affected the transfer to Nutrimost Doctors. Thus, he has failed to allege the third element of tortious interference claim, *i.e.* an absence of privilege. See Acumed, 561 F.3d at 212; CGB Occupational Therapy, 357 F.3d at 387. Accordingly, Count V as alleged against Dr. Wisniewski will be dismissed.

The Court now considers Count V as alleged against Nutrimost Doctors. The parties appear to agree on the existence of a contract between Plaintiff and Nutrimost, and thus the first element is not contested. (See Compl. at ¶¶ 17, 58; Doc. 17 at 8-9). The second element of tortious interference requires that the action allegedly interfering with the plaintiff's contract was undertaken by the defendant "for the specific purpose of causing harm to the plaintiff." Phillips v. Selig, 959 A.2d 420, 429 (Pa. Super. Ct. 2008) (quoting Glenn v. Point Park College, 272 A.2d 895, 899 (Pa. 1971) (holding that the tort of interference with contract "is an intentional one: the actor is acting as he does [f]or the purpose of causing harm to the plaintiff")).

The only alleged action by Nutrimost Doctors, and therefore the only potential "purposeful action" with respect to a tortious interference claim, is its acceptance of the transfer of Defendant Nutrimost's rights. (Compl. at ¶ 77). Plaintiff separately alleges that Nutrimost Doctors was created "for the purpose of granting rights in the NutriMost System through a

15

franchise model." (Id. at ¶ 23). Plaintiff does not plead sufficient facts to establish the second element of tortious interference, that Nutrimost Doctors specifically intended to harm Plaintiff's relationship with Nutrimost. Tortious interference with contract is an intentional tort. Archinaco/Bracken LLC v. Dawson, 2013 WL 5410060 (W.D.Pa. Sept. 25, 2013) (citing Remick v. Manfredy, 238 F.3d 248, 258 (2001)); Glenn v. Point Park College, 272 A.2d 895, 899 (Pa. 1971) (the tort of interference with contract "is an intentional one: the actor is acting as he does [f]or the purpose of causing harm to the plaintiff"). While Plaintiff has alleged facts that Nutrimost Doctors accepted a transfer of rights from Nutrimost, which contravened the terms of Plaintiff's Agreement with Nutrimost, he has simply not alleged that this was done with the intent to harm Plaintiff. As such, Count V will be dismissed in its entirety.

  v.  Count VII – Civil Conspiracy

A claim for civil conspiracy under Pennsylvania law requires a showing that "two or more defendants acted in concert to commit an unlawful act or [to commit] a lawful act by unlawful means, and that they acted with malice." Ickes v. Grassmeyer, 30 F.Supp.3d 375, 402 (W.D.Pa. 2014) (quoting Skipworth v. Lead Industries Association, Inc., 690 A.2d 169, 174 (Pa. 1997). "[C]ivil conspiracy cannot be pled without also alleging an underlying tort." McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005) (quoting Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000); see also Mill Run Associates v. Locke Property Co., Inc., 282 F.Supp.2d 278, 294 (E.D. Pa. 2003) ("[C]ivil conspiracy requires…a criminal act or intentional tort") (citing Boyanowski, 215 F.3d 396).

Plaintiff's only remaining claims are for breach of contract and unjust enrichment. Neither constitutes a tort. Alpart v. General Land Partners, Inc., 574 F.Supp.2d 491, 509 n.18 (E.D. Pa 2008) ("A breach of contract, without more, is not a tort. Because a claim for civil

16

conspiracy can only exist with a finding that the underlying tort occurred, a claim for civil conspiracy cannot be based on a breach of contract.") (quoting Windsor Securities, Inc. v. Hartford Life Ins. Co., 986 F.2d 655 (3d Cir. 1993); Boyanowski, 215 F.3d at 405) (internal quotations omitted)); Boring v. Google Inc., 362 F.App'x 273, 282 (3d Cir. 2010) ("Pennsylvania does not recognize unjust enrichment as a stand-alone tort."). Breach of contract claims are, clearly, contract claims, and unjust enrichment is a claim sounding in "'quasi-contract' which requires the defendant to compensate the plaintiff for the value of [a] benefit conferred." Id. at 281. Without an underlying tort claim as the basis for the alleged civil conspiracy, that claim cannot go forward. Count VII will be dismissed.

    vi.    Count VII – Equitable Relief

Plaintiff's Count VIII for "equitable relief" asks the Court to grant the equitable remedy of an injunction against Defendants. (Compl. at ¶¶ 89-94). "An injunction is a remedy, not a separate claim or cause of action." Jensen v. Quality Loan Service Corp., 702 F.Supp.2d 1183, 1201 (E.D. Pa. 2010). Count VIII therefore does not stand alone as grounds for relief. However, while not valid as an independent count, it may nonetheless be construed as a request on the Court for the granting of equitable relief in connection with the remaining counts. See McHolme/Waynesburg, LLC. v. Wal-Mart Real Estate Business Trust, 2009 WL 1292808 (W.D. Pa. 2009) (holding that a count for specific performance, while not itself an independent cause of action, could remain as a request for equitable relief on other claims) (citing Invensys Inc. v. Am. Mfg. Corp., 2005 WL 600297, at *9 (E.D.Pa. March 15, 2005). Therefore, the Court construes Count VIII as a request for an equitable remedy for breach of contract and/or unjust enrichment, and Defendant's motion to dismiss that count will be denied as moot.

## II. ORDER

For the reasons stated above, the Partial Motion to Dismiss (Doc. 9) is **GRANTED IN PART and DENIED IN PART.** The motion (Doc. 9) is DENIED insofar as it seeks dismissal of Count IV for unjust enrichment against Defendant Nutrimost Doctors. As stated *supra* the Court construes Plaintiff's Count VIII for equitable relief as a request for an equitable remedy for the remaining claims, but not as a separate cause of action. Insofar as Defendants seek to dismiss Count VIII, the motion is DENIED. In all other respects, the motion (Doc. 9) is GRANTED.

Consistent with the foregoing, the following claims are hereby **DISMISSED WITHOUT PREJUDICE** to Plaintiff filing an amended complaint in light of the discussions set forth *supra***:** Count III; Count V; Count VI; and Count VII. **Plaintiff may file an amended pleading as a matter of course on or before August 15, 2016, consistent with the principles discussed herein and the mandates of Rule 11. Failure to file an amended complaint by this date will result in these claims being dismissed with prejudice.**

IT IS SO ORDERED.

August 5, 2016                  s/Cathy Bissoon
                                                           Cathy Bissoon
                                                           United States District Judge

cc (via ECF email notification):

All Counsel of Record